Joseph La Costa (California Bar Number: 108443)
JOSEPH C. LA COSTA, ATTORNEY AT LAW
303 H Street, Suite 429
Chula Vista, California 91910
joelacostaesq@yahoo.com
Telephone: (619) 922-5287

Attorney for Plaintiff,
Gilberto Soberanis

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GILBERTO SOBERANIS and ALEJANDRO VARGAS, as individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; MERS CORP HOLDINGS, INC.; GWEN ALDEN and ANGELA MARIE WILLIAMS, as individuals; and DOES 1 THROUGH 50, INCLUSIVE; <br><br> Defendants. | Case No: **'13 CV 1296 H      KSC** <br><br> VERIFIED COMPLAINT FOR: <br><br> 1. DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202]; <br> 2. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.; <br> 3. VIOLATION OF 12 U.S.C. § 1818(b); <br> 4. VIOLATION OF 12 U.S.C. § 1867(c)-(d); <br> 5. 12 U.S.C. § 4631; <br> 6. CANCELLATION OF INSTRUMENTS; <br><br> DEMAND FOR JURY TRIAL |

VERIFIED COMPLAINT

Page **1** of **68**

# **TABLE OF CONTENTS**

I.     STATEMENT OF THE CASE………………………..……....4

II.    JURISDICTION, VENUE AND PARTIES…………………...……2

III.   INTRODUCTION, FACTUAL & GENERAL ALLEGATIONS…10

IV.    MERS HAD NO INTEREST IN THE NOTE AND DEED OF TRUST……………………………………………………...38

V.     PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT, MONETARY, LEGAL AND EQUITABLE DAMAGES…………………..…………………………………42

VI.    FIRST CAUSE OF ACTION – DECLARATORY RELIEF [28 U.S.C. §§ 2201, 2202].....................................................................45

VII.   SECOND CAUSE OF ACTION – VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ………………………………………………...…………50

VIII.  THIRD CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 1818(b)…………………………………………………...54

IX.    FOURTH CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 1867(c)-(d)…………….…………………………………...56

X.     FIFTH CAUSE OF ACTION – 12 U.S.C. § 4631………………...58

XI.    SIXTH CAUSE OF ACTION – CANCELLATION OF INSTRUMENTS …………………………………………..63

PRAYER FOR RELIEF………………………………....…64

VERIFICATION……………………………………………...66

DEMAND FOR A JURY TRIAL………………………………67

LOCAL RULE 5.1 CERTIFICATION……………………………68

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **COMPLAINT**

COMES NOW, Plaintiffs Gilberto Soberanis (Hereinafter referred to as "Plaintiff"), an individual, by and through his attorney of record for his COMPLAINT against Defendants, Mortgage Electronic Registration Systems, Inc. (Hereinafter referred to as "MERS ") as the purported Beneficiary acting on behalf of Lender as nominee for Plaintiffs' loan and executed the Security Instrument entitled "Corporate Assignment of Deed of Trust" (Hereinafter referred to as Assignment"); MERS CORP Holdings, Inc. (Hereinafter referred to as "MERS CORP") is the parent company that owns MERS as a subsidiary; "Gwen Alden" who purportedly executed the Assignment on the behalf of MERS as "Assistant Secretary"; and "Angela Marie Williams" who purportedly notarized the signature for "Gwen Alden" on the Assignment; for their (collectively, "Defendants") actions in this complaint regarding the validity of the Assignment that has subsequently harmed Plaintiff financially, pleads as follows:

## I. <u>STATEMENT OF THE CASE</u>

1. Plaintiff alleges that Defendants have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined

Members; and have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.

2. By reason of the conduct set forth above, MERS, MERSCORP and Defendants and/or more than one Doe Defendant engaged in unsafe or unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks.

3. Through this action, Plaintiffs seek to stop Defendants fraudulent practices; cancel the Assignment, which on information and belief is NOT validly executed by the Defendant MERS; and determine the status of the Defendants' claims.

## II. JURISDICTION, VENUE AND PARTIES

4. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692, 42 U.S.C. § 1983 which confer original jurisdiction on federal

district courts in suits to address the deprivation of rights secured by federal law.[1]

5. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

6. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §1332, which confers original jurisdiction on federal

---

[1] The Ninth Circuit instructs that in actions brought under 28 U.S.C. § 2201, district courts must first determine whether there is an actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942). The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; see also *Schafer v. Citimortgage* No. CV 11-03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court in *Schafer,* This action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

7. The unlawful conduct, illegal practices, and acts complained of and alleged in this complaint were all committed in the Southern District of California and involved real property located in the Southern District of California. Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

8. Plaintiffs are now, and at all times mentioned herein as individuals residing in the County of San Diego, State of California. At all relevant times to this action, Plaintiffs have owned the real property commonly known as **3575 Trophy Drive, La Mesa, California 91941**; further described as:

Assessor's Parcel Number **499-351-10-00**

Lot 357 of Brookside Unit No. 3, in the County of San Diego, State of California, according to Map thereof No. 2834, filed in the Office of the County Recorder of San Diego County on January 16, 1952.

9. MERS and MERSCORP are each an "institution-affiliated party" within the meaning of 12 U.S.C. § 1813(u) by virtue of MERS acting as agent for lender with respect to serving as mortgagee in a nominee capacity for the lender, and are each an "entity-affiliated party" within the meaning

of 12 U.S.C. § 4502(11) by virtue of MERS acting as agent for First Franklin, a division of National City Bank of Indiana (Hereinafter referred to as "First Franklin"); with respect to serving as mortgagee in a nominee capacity for the owner of residential mortgage loans.

10. MERS is a wholly-owned subsidiary of MERSCORP. MERSCORP's shareholders include federally regulated financial institutions that own and/or service residential mortgages, and other primary and secondary mortgage industry participants.

11. MERSCORP operates a national electronic registry that tracks beneficial ownership interests and servicing rights associated with residential mortgage loans and any changes in those interests or rights. There are approximately 5,000 participating Members, of which 3,000 are residential mortgage servicers. Members register loans and report transfers, foreclosures, and other changes to the status of residential mortgage loans on the MERS System. There are currently approximately 31 million active residential mortgage loans registered on the MERS System. Examined Members receive a substantial portion of the services provided by MERSCORP and MERS.

12. At all relevant times Defendant **GWEN ALDEN** is an individual domiciled in the State of Minnesota.

13. At all relevant times Defendant **ANGELA MARIE WILLIAMS** is an individual domiciled in the State of Minnesota.

14. Plaintiffs is ignorant of the true identity and capacity of Defendant(s) designated as DOES 1-50, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial. However, Plaintiffs allege on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendant(s), and were, and are responsible for the injuries, damages, and harm incurred by Plaintiffs. Plaintiffs further allege on information and belief that each such designated Defendant acted, and acts, as the authorized agent, representative, and associate of the other Defendant(s) in doing the things alleged herein.

15. Whenever reference is made in the Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendant(s).

16. Any allegation about acts of any corporate or other business Defendant(s) means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, secretaries and/or representatives while they were acting within the actual or ostensible scope of their authority.

17. At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts alleged in the Complaint. Additionally, some or all of the Defendant(s) acted as the agent of the other Defendant(s), and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

18. At all relevant times, each Defendant knew or realized that the other Defendant(s) were engaging in or planned to engage in the violations of law alleged in this complaint. Knowing or realizing that the other Defendant(s) were engaged in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendant(s) in the unlawful conduct.

### III. INTRODUCTION, FACTUAL AND GENERAL ALLEGATIONS

19. MERS serves as mortgagee of record and nominee for the participating Members in local land records. MERS takes action as mortgagee through documents executed by "certifying officers" of MERS. MERS has designated these individuals, who are officers or employees of Members or certain third-parties who have contractual relationships with

Members, as officers of MERS. By virtue of these designations, the certifying officers execute legal documents in the name of MERS, such as mortgage assignments and lien releases.

20. During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream – home ownership. Mortgage lenders and investment banks aggressively lured the American people into predatory loans with teaser interest rates, and purchasing homes with inflated appraisals. All while under the promise that the booming real estate market would continue to boom. Wall Street took the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization." These "securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificateholders" of the securities that were to be fed by the toxic loans.

21. Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic

insurance products in the form of "Credit default Swaps.[2] Thus, when

the Mortgage Boom turned into a Mortgage Meltdown (which it did),

---

[2] In 1995, JPMorgan Chase, created the Credit Default Swap (CDS).

Essentially, a CDS is a form of insurance intended to protect the buyer of the

policy in case the borrower defaults on the loan. If the borrower defaults, the

buyer of the CDS receives a large payout for the cash value of the defaulted

loan. The main difference between a traditional insurance policy and a CDS is

that anyone can purchase a CDS, even those who have no direct "insurable

interest" in the lender. CDSs were instrumental during the housing bubble

because once the banks ran out of creditworthy borrowers; they had to turn to

un-creditworthy "subprime" borrowers. To avoid losses from default, the

banks moved these risky mortgages off their books by bundling them into

"securities" and selling them to investors. To induce the investors to buy –

these securities, the securities were then "insured" with credit default swaps.

CDSs allowed investors to bet against the average American to default on their

mortgage with little risk. CDS insurance was especially attractive to investors

who had knowledge of the subprime mortgage industry, since they knew the

likelihood of default on these loans was much higher. Notably, AIG Insurance

Company ("AIG"), an insurance carrier who owned a considerable market

they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

22. However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow its own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all. Under the standard model, the promissory notes were **supposed** to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders"). These "true sales" allow the original lenders to move the notes off the books, eliminating the need to maintain capital-adequacy reserves against default. The purpose of securitizing collateral debt obligations was to provide a large supply of

---

share of these CDS policies, was unable to make good on these policies after the housing bubble burst, resulting in AIG seeking a government bailout. *See* Justin Fox, *Why the Government wouldn't let AIG Fail*? TIME Business (September 16, 2008) http://www.time.com/time/business/article/0.8599.1841699,00.html. Thus, in the end, it was the American taxpayer who bore the burden of these CDS.

money to lenders for originating loans, and to provide investment to

bond holders – which were expected to be relatively safe.

23. The Securitized Trusts, if ever formed properly, are subject to and

governed by (1) the Pooling and Servicing Agreement; (2) The

Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the

common law trust rules of New York, and (5) Internal Revenue Code

section 860A through 860G, better known as the Real Estate Mortgage

Investment Conduit ("REMIC") rules.

24. An essential aspect of the mortgage securitization process is that the

Trust must obtain and maintain good title to the mortgage loans

comprising the pool for that certificate offering. This is necessary in

order for the Trustee of the purportedly Securitized Trust to be legally

entitled to enforce the mortgage loans in case of default.

25. In addition to other required documentation to complete the Collateral

File of any given loan, two documents relating to each mortgage loan

must be validly transferred to the Trust as part of the securitization

process – the promissory note and the security instrument (deed of trust

or mortgage). In this case, on information and belief, neither document

was validly transferred, which MERS executed and will purport to

represent as "Beneficiary acting solely as nominee on behalf of Lender."

26. Here, Plaintiffs allege that the "true sales" never took place, because the Note and Deed of Trust were improperly transferred and sold by MERS in or about August of the year 2011, and thereby MERS did not at any time transferred any legal, equitable, and pecuniary interest in Plaintiffs' Note and Deed of Trust from the original lender.

27. As a result, thereof MERS, which purports to have been Plaintiffs' Beneficiary actually has and had no secured or unsecured right, title, or interest in Plaintiffs' Note, Mortgage Deed of Trust and Residence, and has no right to collect mortgage payments, demand mortgage payments, or report derogatorily against Plaintiffs' credit, or undertake any other right conferred in the Deed of Trust.[3]

---

[3] Plaintiffs' allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.S. Bank vs. Ibanez,* SJC-10694, 2011 WL 38071. In *Ibanez*, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages. The court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title

28. Plaintiffs allege that the Defendant MERS does not now, nor have they ever, owned any right, title, or interest in the Plaintiffs' Note, Deed of Trust, or property.

29. Plaintiffs, on information and belief, further allege that Defendant MERS will claim that they had owned Plaintiffs' Note and Deed of Trust, and have been dissolved due to the disbursement and receipt of mortgage insurance payouts to Defendants, Doe Defendants and/or the Certificateholders (including, but not limited to, Credit Default Swaps and other mortgage insurance products).

30. Nonetheless, MERS attempts to take advantage of the complex structured financial system to defraud yet another homeowner.

31. Therefore, acts undertaken by MERS based on a claimed interest in the Note and Deed of Trust is void and without any legal force or effect, including the attempt to sell the property. [4]

---

from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

[4] Plaintiffs relies on the oft quoted maxim cited in *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 425 n. 10 (S.D.N.Y 2010) which sets that **someone who is not a party to a contract has no standing to enforce its terms**.

32. Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct and/or indirect written and oral communication with Defendants; (3) counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of the purported "Corporate Assignment of Deed of Trust;" 5) and an audit of multiple filings with the Securities and Exchange Commission ("SEC"), including multiple prospectus and Pooling and Servicing Agreements ("PSA") related to MERS and the Securitization Trusts.

33. Nothing in the Plaintiffs' complaint should be construed as an attack on the concept or practice of the establishment of securitization trusts, or an allegation of impropriety relating to the existence of securitization trusts. When properly formed, these trusts conform to the established law.

34. Plaintiffs complain, however, that its Note and Deed of Trust are not part of any securitization trust, and the discussion is included to properly illustrate the nature of the entity that purports to be Plaintiffs' creditor, and more importantly the irregularities with respect to the attempted transfer of Plaintiffs' contract to the Trust further illustrate the allegations set forth in this complaint that the Defendant MERS did not

ever transfer pecuniary interest in the Plaintiffs' Note and Deed of Trust contracts.

35. On or about May 1, 2006 the Plaintiffs executed a Mortgage Note and a Deed of Trust (recorded on May 5, 2006) in favor of First Franklin. Alliance Title Company was named on the Deed of Trust as the "Trustee," and the Mortgage Electronic Registration System ("MERS") was acting as nominee for the Lender, and was the **Beneficiary under <u>this</u> security instrument** (the security instrument being the Deed of Trust).

36. Plaintiffs allege that MERS is only the Beneficiary for the Deed of Trust by acting on behalf of the lender as nominee. However, MERS cannot enforce their standing as a Beneficiary in any other security instrument pertaining to Plaintiffs' Property.

37. On or about August 25, 2011 a document entitled "Corporate Assignment of Deed of Trust" ("Assignment") executed by MERS against Plaintiffs' property (recorded on September 7, 2011), transferring all beneficial interest to Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11, Mortgage Pass-Through Certificates, Series 2006-FF11. It was signed and executed by "Gwen Alden" as "Assistant Secretary" for

MERS and was notarized the same day by "Angela Marie Williams" in the County of Dakota, State of Minnesota.

38. Plaintiff alleges on information and belief, that the "Gwen Alden" is not an "Assistant Secretary" or any other employee title registered with MERS and/or MERSCORP.

39. Plaintiff alleges that "Gwen Alden" is a robo-signer, which is an individual without any corporate and/or legal authority to sign and/or execute corporate and/or legal documents in the capacity of Plaintiff's Property.

40. Furthermore, on information and belief, Plaintiff alleges that the Notary Public "Angela Marie Williams" has notarized numerous Security Instruments for MERS employees and agents in transferring beneficial interest.

41. Plaintiff contends that "Angela Marie Williams" should have known illegal activity was occurring every time she notarized a document on behalf of MERS and therefore had a reasonable duty to refuse and/or discontinue notary services to MERS. However, Plaintiff alleges that "Angela Marie Williams" will continue to notarize documents on behalf of MERS that will significantly harm home owners across America.

42. William C. Hultman ("Hultman"), is a former Secretary and Treasurer

of MERS, and now serves as Vice President of Legislative Affairs for MERSCORP.

43. In re: FERREL L. AGARD, Debtor. Case No. 810-77338-reg of United States Bankruptcy Court, Eastern District of New York, Hultman has testified in a Declaration that defined the role of MERS.

44. Hultman stated that loans are registered to a "MERS Member" who has entered into the MERS Membership Agreement. MERS Members enter into a contract with MERSCORP to electronically register and track beneficial ownership interests and servicing rights in MERS registered mortgage loans. MERS Members agree to appoint MERS, which MERSCORP wholly owns, to act as their common agent, or nominee, and to name MERS as the lien holder of record in a nominee capacity on all recorded security instruments relating to the loans registered on the MERS System. When a promissory note is sold by the original lender to others, the various sales of the notes are tracked on the MERS System.

45. Hultman goes on to say in his Declaration that once MERS becomes the beneficiary of record as nominee, it remains the beneficiary when the beneficial ownership interests in the promissory note or servicing rights are transferred by one MERS Member to another and that it tracks the

transfers electronically on the MERS System. So long as the sale of the note involves a member of MERS, MERS remains the beneficiary of record on the deed of trust and continues to act as nominee for the new beneficial owner.

46. On April 7, 2010, in the Superior Court of New Jersey, Hultman gave an oral sworn video/telephone deposition in the case regarding Bank of New York v. Ukpe Docket No. F-10209-08 4-20-2009 (citation omitted), indicating that no employees exist in MERS. Here are some questions ("Q") and Hultman's anwers ("A") to this deposition:

"Q: Do the assistant secretaries — first off, are you a salaried employee of MERS?

A: No.

Q: Are you a salaried employee of MERS Corp, Inc.?

A: Yes.

Q: I thought, sir, there's a company that was formed January 1, 1999, Mortgage Electronic Registration Systems, Inc. Does it have paid employees?

A: No, it does not.

Q: Does it have employees?

A: No.

Q: Does MERS have any employees currently?

A: No.

Q: In the last five years has MERS had any employees?

A: No.

Q: How many assistant secretaries have you appointed pursuant to the April 9, 1998 resolution; how many assistant secretaries of MERS have you appointed?

A: I don't know that number.

Q: Approximately?

A: I wouldn't even begin to be able to tell you right now.

Q: Is it in the thousands?

A: Yes.

Q: Have you been doing this all around the country in every state in the country?

A: Yes.

Q: And all these officers I understand are unpaid officers of MERS?

A: Yes.

Q: And there's no live person who is an employee of MERS that they report to, is that correct, who is an employee?

A: There are no employees of MERS."

47. According to Hultman, the title of "Assistant Secretary" is the title given to employees of MERSCORP otherwise known as Corporate Officers. Hultman reiterates that MERS itself has no employees and is just a function of its parent company MERSCORP.

48. On the MERSCORP website[5], there is no indication that "Gwen Alden" is a Corporate Officer or acts as an "Assistant Secretary" for MERSCORP – "as there are no employees for MERS" (according to Hultman's deposition).

49. Plaintiffs further alleges that "Gwen Alden" is not an employee for MERS, and that neither "Gwen Alden" and/or MERS had any corporate and/or legal authority whatsoever to execute such a document that was designed to disguise the owner of the Plaintiffs' note and Deed of Trust.

50. Plaintiffs allege that the Assignment is not legally valid and should therefore be considered voidable. In the alternative, Plaintiffs asks the Court to rescind, remand, and/or cancel the assignment.

51. Plaintiffs allege that MERS over-stepped its limits as a nominee for the Lender, by executing an Assignment.

52. Plaintiffs further contend that MERS is limited as a nominee for the Lender and only has partial authority that is only reserved in relation to

---

[5] http://www.mersinc.org/about-us/corporate-officers

the Deed of Trust and cannot perform duties such as executing an assignment.

53. Justice Wayne Saitta of the Supreme Court, Kings County rendered a decision that defined the MERS' role as a "nominee" in the case *Bank of New York v. Alderazi*, 2010 NY Slip Op 20167 in which Justice Saiita opines:

"[I]n *Schuh Trading Co. v. Commisioner [sic] of Internal Revenue*, 95 F.2d 404, 411 (7th Cir. 1938), [the Court] defined a nominee as follows: "**The word nominee ordinarily indicates on designated to act for another as his representative in a rather limited sense.** It is sometimes used to signify an agent or trustee. It has no connotation, however, other than that of acting for another, or as grantee of another…Id. Emphasis added. Black's Law dictionary defines **a nominee as "[a] person designated to act in place of another, usually in a very limited way."** Agency is a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. *Hatton v. Quad Realty Corp.*, 100 AD2d 609, 473 NYS2d 827, (2nd Dept 1984). "[A]n agent constituted for a particular purpose, and under a limited and

circumscribed power, cannot bind his principal by an act beyond his authority." *Andrews v. Kneeland*, 6 Cow. 354 N.Y.Sup. 1826."

54. Judge John C. Coughenour of the Federal District Court for the Western District of Washington in the case of *Bain v. Metro. Mortg. Group, Inc., et al*. 175 Wn. 2d 83, 285 P.3d 34 (2012), *Selkowitz v. Litton Loan Servicing, LP*, No. C10-05523-JCC, 2010 WL 3733928 (W.D. Wash. Aug. 31, 2010) (unpublished) asked if Mortgage Electronic Registration Systems, Inc., is a lawful "beneficiary" within the terms of Washington's Deed of Trust Act, Revised Code of Washington section 61.24.005(2), if it never held the promissory note secured by the deed of trust? The short answer to this question was "No." An excerpt from the case:

"CHAMBERS, J. – In the 1990s, the Mortgage Electronic Registration System Inc. (MERS) was established by several large players in the mortgage industry. MERS and its allied corporations maintain a private electronic registration system for tracking ownership of mortgage-related debt. **This system allows its users to avoid the cost and inconvenience of the traditional public recording system and has facilitated a robust secondary market in mortgage backed debt and securities.** Its customers include lenders, debt servicers, and

financial institutes that trade in mortgage debt and mortgage backed securities, among others. MERS does not merely track ownership; in many states, including our own, MERS is frequently listed as the "beneficiary" of the deeds of trusts that secure its customers' interests in the homes securing the debts. **Traditionally, the "beneficiary" of a deed of trust is the lender who has loaned money to the homeowner (or other real property owner).** The deed of trust protects the lender by giving the lender the power to nominate a trustee and giving that trustee the power to sell the home if the homeowner's debt is not paid. Lenders, of course, have long been free to sell that secured debt, typically by selling the promissory note signed by the homeowner. Our deed of trust act, chapter 61.24 RCW, recognizes that the beneficiary of a deed of trust at any one time might not be the original lender. The act gives subsequent holders of the debt the benefit of the act by defining "beneficiary" broadly as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2)."

55. The U.S. Bankruptcy Court for the District of Idaho understands the distinction. In the case of *In Re: Wilhelm et al.*, Case No. 08-20577-TLM (opinion of Hon. Terry L. Myers, Chief U.S. Bankruptcy Judge,

July 9, 2009), Chief Federal Bankruptcy Judge Myers analyzed the decisional law as to MERS' purported standing to assign the Note where **MERS was nothing more than the "nominal beneficiary" under the Deed of Trust**. The Court concluded that even if MERS is granted authority to foreclose if required by "custom or law" (as set forth in the Deed of Trust), **this language does not, either expressly or by implication, authorize MERS to transfer promissory notes.**

56. The Court cited to the cases of *Saxon Mortgage Services v. Hillery*, 2008 WL 5170180 (N.D. Cal., Dec. 9, 2008) and *Bellistri v. Ocwen Loan Servicing, LLC*, 2009 WL 531057 (Mo. Ct. App. March 3, 2009) as being in accord, holding that **MERS presents no evidence as to who owns the note or of any authorization to act on behalf of the present owner of the note.** Both cases were effectively dismissed (Hillery by outright dismissal; Bellistri by summary judgment), finding that there was no standing as there was no authority for the MERS assignment of the note. The Wilhelm Court quoted the pertinent portion of the Bellistri opinion:

> "The record reflects that BNC was the holder of the promissory note. There is no evidence in the record or the pleadings that MERS held the promissory note or that BNC gave MERS the

authority to transfer the promissory note. **MERS could not transfer the promissory note**; therefore the language in the assignment of the deed of trust purporting to transfer [the] promissory note is ineffective."

57. The Wilhelm court thus held that the various movants, who claimed to be "secured creditors" by virtue of MERS assignments, **could not rely on the MERS assignments** to establish an interest in the notes and that because they thus could not prove ownership in and possession of the notes, they were not the real party in interest and lacked standing to seek relief from the automatic stay.

58. There is a critical and distinct legal issue that is paramount in any foreclosure defense involving a case where any foreclosing party attempts to rely on a MERS assignment. The rule of law is clear: as **the note does not provide MERS with any authority** of any kind, MERS, notwithstanding its claimed status as "nominee" under the Mortgage or Deed of Trust or assignment, **CANNOT transfer the Note**, as **it has no legal authority** to do so, and thus any party seeking to foreclose based on a MERS assignment is seeking to do so without proper legal standing as it is not the real party in interest as to the Note (and as the **foreclosing party must be in actual possession and ownership of**

**both the Note and the Mortgage/Deed of Trust** in order to be legally entitled to seek foreclosure).

59. In a recent Bankruptcy case in the Southern District of California which has similar facts to this case; the Honorable Judge Margaret M. Mann, ruled in the Bankruptcy case of *In Re Luis E. Gallardo*, 10-04710-MM7 that **MERS did not have standing to assign the Deed of Trust**.

60. On May 20th, 2010 in the United States Bankruptcy Court, Eastern district of California, another opinion came down in the case of *In Re Walker*, 10-21656-E-11 that established again that **MERS did not have any standing to assign the Deed of Trust**. The court stated that since no evidence has been presented that the Promissory Note has been legally transferred, MERS could only transfer what interest it had in the Deed of Trust, "The note and Deed of Trust are inseparable" id.

61. An assignment of the note carries the mortgage with it, while an assignment of the (Deed of Trust) is a nullity" (*Carpenter v. Longan* 83 US 271, 274 (1872). **MERS is not the owner of the note, it could not transfer the note and therefore it has no beneficial interest in the Deed of Trust**. See *In Re Foreclosure Cases* 521 F Supp 2d 650 (S.D. Oh.2007), *In Re Vargas* 396 BR 511, 520; *Landmark National Bank v.*

*Kesler* 216 P.3d 158 (Kan 2009), *La Salle Bank v. Lamy* 824 N.Y. S 2d 769 (N.Y. Supp Ct. 2006).

62. The Assignment was made by "officers" of MERS using delegations of authority of no longer existing MERS predecessor corporations.

63. The MERS Assignment is deficient because it omits an assertion that the assignor is the holder under the MERS registry for the MIN number of the mortgage being assigned and the transfer is being recorded on the MERS registry.

64. An interest in a Deed of Trust cannot be conveyed by an endorsement of the promissory note in blank.

65. The Corporate Officers of MERS who are allegedly authorized to sign documents on behalf of MERS are not "officers" of the corporation as the term officer of a corporation is legally defined.

66. Because MERS is a mere custodian with no legal or beneficial interest in the promissory note, MERS cannot assign a promissory note to an assignee.

67. Because MERS is a mere custodian with no legal or beneficial interest in the promissory note, the Deed of Trust has been divided from the note rendering the Deed of Trust unenforceable.

68. MERS holding of the note endorsed in blank as nominee of a Lender

sold to a mortgage backed securities trust is a violation of REMIC requirements.

69. MERS holding of the note endorsed in blank as nominee of a Lender sold to a mortgage backed securities trust is a violation of warranties and representation contained in the master pooling and servicing agreement and prospectus.

70. MERS was created to perform a service with an illegal purpose, namely to circumvent the recordation of assignments and payment of recording fees. The issuance of assignments in furtherance of such an illegal purpose is unenforceable.

71. An assignment of the promissory note from MERS to the servicer of a note is of either of no legal effect or an illegal conversion of the note.

72. There is no evidence of MERS' ownership of the underlying note, and other courts have concluded that MERS does not own the underlying notes, MERS did not own the underlying note; it could not transfer the beneficial interest to another. Any attempt to transfer the beneficial interest without ownership of the underlying note is void by law.

73. MERS acts like a debt collector and should be treated as such, thereby subjecting them to the rules and regulations of The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692(a),(j).

74. On April 13, 2011, The Office of the Comptroller of the Currency announced formal enforcement actions against eight national bank mortgage servicers and two third-party Servicer providers for unsafe and unsound practices related to residential mortgage loan servicing and foreclosure processing.

75. The eight servicers are Bank of America, Citibank, HSBC, JPMorgan Chase, MetLife Bank, PNC, U.S. Bank, and Wells Fargo. The two service providers are Lender Processing Services (LPS) and its subsidiaries DocX, LLC, and LPD Default Solutions, Inc.; and MERSCORP and its wholly owned subsidiary, Mortgage Electronic Registration Systems, Inc. (MERS).

76. The enforcement actions require the servicers to promptly correct deficiencies in residential mortgage loan servicing and foreclosure practices that examiners identified in reviews conducted during the fourth quarter of 2010. The actions require the servicers to make significant improvements in practices for residential mortgage loan servicing and foreclosure processing, including communications with borrowers and dual-tracking, which occurs when servicers continue to pursue foreclosure during the loan modification process. The enforcement actions require the servicers to ensure that foreclosures are

not pursued once a mortgage has been approved for modification and to establish a single point of contact for borrowers throughout the loan modification and foreclosure processes. In addition, the actions require servicers to establish robust oversight and controls pertaining to their third-party vendors, including outside legal counsel, that provide default management or foreclosure services.

77. The OCC's actions also require each servicer to engage an independent firm to conduct a multi-faceted review of foreclosure actions between January 1, 2009, and December 31, 2010. This requirement includes a comprehensive "look back" to assess whether foreclosures complied with federal and state laws, whether foreclosures occurred when grounds for foreclosure were not present, such as when loans were performing, and whether any errors, misrepresentations or other deficiencies resulted in financial injury to borrowers. The actions also require each servicer to establish a process for borrowers who believe they have been financially harmed by such deficiencies to make submissions to be considered for remediation. Each servicer must also submit a plan to remediate all financial injury to borrowers caused by any errors, misrepresentations, or other deficiencies identified in the independent consultant's findings.

///

78. The OCC based its enforcement actions on the findings of examinations conducted as part of the interagency horizontal reviews undertaken by the federal banking regulators in the fourth quarter of 2010. Examinations of these eight national bank servicers identified significant weaknesses in mortgage servicing and foreclosure governance that resulted in unsafe and unsound practices.

79. According to the OCC report, in connection with services provided to Examined Members related to tracking, and registering residential mortgage loans and initiating foreclosures ("residential mortgage and foreclosure-related services"), MERS and MERSCORP:

    a.  Have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and

    b.  Have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.

80. By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe or unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks.

81. MERS cannot claim any legal or equitable right, title, or interest in Plaintiffs' Note, Mortgage, Deed of Trust or Property since the Note and Deed of Trust are not part of the trust res. Standing to seek collection is precluded as a matter of law. The Defendant's cannot seek to collect payments under a contract that they were not a party to, and not the beneficiary of an assignment of.[6]

82. Plaintiffs do not allege or assert that they are beneficiaries or parties to the Trust PSA. Rather, Plaintiffs allege that the invalid transfer of ownership of the Note and Deed of Trust makes it impossible for MERS to claim, allege or assert that it assigned, transferred or granted Plaintiffs' Note or Deed of Trust, or any interest therein, in any manner whatsoever.

83. Plaintiffs also allege that the failure to properly and actually transfer the Note and Deed of Trust to MERS has resulted in an unperfected lien that

---

[7] *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 425 n. 10 (S.D.N.Y 2010)

Defendants cannot enforce in any manner whatsoever, and that only the

actual successor in interest to the Note and Deed of Trust has any

interest therein.[7]

84. Plaintiffs relied on the misrepresentations of MERS and has been

damaged in the following ways: (1) multiple parties may seek to enforce

---

[7] These allegations are identical to those brought by the Nevada Attorney

General against Bank of America, BAC Home Loans Servicing, and Quality,

in which Attorney General Catherine Cortez Masto alleges that these entities

engaged in unlawful and deceptive practices by misrepresenting to

homeowners that they had authority to foreclose despite the fact that these

were fatal deficiencies in transfers to the securitization Trusts. *State of Nevada*

*vs. Bank of America et al.,* No. 3:11-cv-00135-RCJ, (C.D. Nev August 30,

2011). The AG concludes that, "[t]hese are not mere technicalities. The PSA's

spelled out specific procedures in order to ensure a proper transfer, protect the

Trusts as the holders in due course, and avoid subjecting the Trusts to taxation.

In addition, borrowers need to know the actual holders of their mortgages so

that, for example, they can investigate and assert available defenses in

foreclosures, including that the agent of the trustee lacks authority or standing

under the Note." *Id.* at ¶ 146.

the debt obligation against them[8]; (2) the title to their home has been

clouded and rendered potentially unmarketable, as any would-be buyer

of Plaintiffs' home will find themselves in legal limbo, unable to know

with any certainty whether they can safely buy Plaintiffs' home or get

title insurance, given the potential of competing claims between the true

owner of the Note and Deed of Trust or a successor or assign and

MERS; (3) Plaintiffs have been paying the wrong party for an

undetermined amount of time and overpaid in interest that was over

calculated; (4) Plaintiffs are unable to determine whether they sent

monthly mortgage payments to the right party since there are potentially

competing claims as between multiple creditors; (5) Plaintiffs have

---

[8] The present existence or non-existence of a competing claim or creditor is

irrelevant to establish the Defendant's claims to the pecuniary rights under the

Note and Deed of Trust. Whether or not the true owner asserts their rights does

not allow the Defendant to collect payments under a contract it has no

demonstrable interest as a party or assignee, nor is it probative of any rights in

favor of the Defendant. Without more than a bald claim, the Defendant has no

rights superior to any other putative claimant. There is no legal concept of

"Adverse Possession" of a Promissory Note.

expended significant funds to cover the cost of litigation and related

costs.

85. In addition to seeking compensatory consequential, punitive, and other

damages, Plaintiffs seek Declaratory Relief as to whether the Deed of

Trust (Mortgage) secures any obligation of Plaintiffs  in favor of MERS

such that any of them can collect Plaintiffs' mortgage payments, demand

payment, engage in debt collection activities, or undertake any other

right conferred upon the Lender in the Note and Deed of Trust, including

conducting an Assignment transferring beneficial interest to a new

servicer who can conduct a valid non-judicial foreclosure sale of the

property to the exclusion of the true beneficial owner.

## IV.     MERS HAD NO INTEREST IN THE NOTE AND DEED OF TRUST

86. As will be shown in more detail below, the Plaintiffs allege on

information and belief that:

   a.  The beneficiary under their Note and Deed of Trust is

       presently unknown.

   b.  Defendant MERS was not the successor or assign of the Note

       and Deed of Trust.

/ / /

c. At no time did the original Lender First Franklin, effectuate any assignment of any interest in the Note and Deed of Trust, directly or indirectly, to Defendant MERS, or any predecessor(s) in interest to these entities.

d. The purported assignment prepared at the request of the Defendant MERS was executed without the authority to do so by the First Franklin, who was the true Beneficiary of the Deed of Trust.

87. Plaintiffs allege that "Gwen Alden" is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever. In point of fact, at the time "Gwen Alden" is purported to have signed the Assignment, she was not then, nor ever was, the "Assistant Secretary" for MERS.

88. California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

"Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or

subdivision (d) of Section 3418. A person may be a person

entitled to enforce the instrument even though the person is

not the owner of the instrument or is in wrongful possession

of the instrument.

89. On information and belief, none of the Defendants were or are present

holders in due course of Plaintiffs' Note such that they can enforce

Plaintiffs' obligation and demand mortgage payments or undertake any

activities permitted under the relevant Deed of Trust including the

collection of moneys or the exercise of rights under the Deed of Trust,

including the power of sale.

90. On information and belief, Defendant MERS was not and is not a non-

holder in Possession of Plaintiffs' Note, who has rights of the holder.

91. If there is a holder in due course of Plaintiffs' Note at issue, pursuant to

California Commercial Code section 3301, et seq. it is the entity that can

actually establish a Pecuniary, legal, and equitable interest in the

Property, and provide an unbroken chain of title to Plaintiffs' Note and

Mortgage.[9]

---

[9] The testimony of Linda DeMartini, a 10-year litigation manager for

Countrywide Home Loans in *In Re Kemp*, Case No. 0S-l8700-JHW (Bankr.

D.N.J. November 16, 2010) (for Publication) exposed the Shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due Course" status. In that case Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement; Ms. DeMartini testified that it was standard Practice for Countrywide to warehouse the original notes, which were stored in Simi Valley, California despite securitization contracts that required the notes to be physically transferred to Sponsors trustees or custodians of the securitized trusts. The findings in court decisions all over the country, news stories, attorneys general's complaints, including one by the New York Attorney General against Defendant New York Bank Mellon , and state and federal investigations reveal that business practices like Countrywide's were common place and, like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans. Ms. Martini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which of the 104 loans that were examined were endorsed by Countrywide: "If the

92. On information and belief, none of the Defendants, were/are entitled to enforce Plaintiffs' Note pursuant to § 3309 or subdivision (d) of § 3418.

93. Plaintiffs allege on information and belief that MERS and/or its agents are a part of a group that fraudulently enforces a debt obligation in which they have no pecuniary equitable or legal interest and thus no standing to seek collection or enforce the rights contained in the Note and Deed of Trust. Thus, MERS's conduct is part of a fraudulent debt collection scheme to the detriment of the Plaintiffs.

## V. <u>PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES</u>

94. The conduct described above by MERS and their respective agent(s) and employee(s), was malicious because Defendant(s) knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and

---

lack of endorsement on these notes is typical - and 104 out of 104 suggests it is – the problem occurs across Countrywide securities." *See* Abigail Field, *At Bank of America, More Incomplete Mortgage Docs Raise More Questions,* Fort., (June 3, 2011), http://finance.fortune.cnn.com/2011/06/03/at-bank-of/america-moreincomplete-mortgage-docs-nad-more-questions/.

Deed of Trust (which was the original Lender). Despite such knowledge, Defendant(s) transferring of Beneficial interest provided opportunities to debt collectors to continue to demand and attempt to collect Plaintiffs' mortgage payments and take other collection actions against the Plaintiffs.

95. On information and belief, at all time's material, MERS had, and has, actual knowledge that Plaintiffs' account(s) were not accurate.

96. On information and belief, Plaintiffs made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiffs' account(s).

97. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs' credit and credit score have been severely damaged. Plaintiffs may be unable to refinance out of their present loan, buy another property, or sell their home, or otherwise have access to credit.

98. As a direct and proximate result of the Defendants actions as set forth above, the title to Plaintiffs' home has been slandered, clouded, and its salability has been rendered potentially unmarketable.

99. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs do not know who the current beneficiary of their

Note and Mortgage actually is, such that they are now subject to double financial jeopardy.

100. As a direct and proximate result of the Defendants actions set forth above, *multiple* parties can attempt to enforce Plaintiffs' debt obligation.

101. The conduct of Defendants and one or more of the Doe defendants has led to the imminent loss of Plaintiffs' home and to additional pecuniary damages. The pecuniary damages include, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, the costs associated with removing the cloud from their property title and attorneys' fees, in an amount that will be proven at trial.

102. The conduct of Defendants and one or more of the Doe Defendants' conduct, was malicious because Defendant(s) were aware that they did not know the identity of the current and true beneficiary of Plaintiffs' note and Deed of Trust.

103. Defendants and one or more of the Doe Defendants intentionally and fraudulently covered up this defect by wrongfully recording fraudulent documents and Security Instruments such as the Assignment.

104. Subsequently this would enable others acting in concert with Defendants to *illegally and fraudulently* collect on Plaintiffs' debt.

105. The title to Plaintiffs' Property has been rendered unmarketable and unsalable because of the multiple claims being made against Plaintiffs' debt and underlying security (the Subject Property).

106. If the Assignment is not cancelled and set aside, together with all other documents recorded and identified herein, Plaintiffs will be incurably prejudiced. Plaintiffs will be denied the opportunity to identify and negotiate with their *true creditor*, exercise their right to verify and validate their debt, and now suffer the consequences of a future false claim of ownership if a future Trustee's sale was allowed to occur now the Property is in default that was set forth by the new Beneficiary that was transferred interest to by MERS.

## VI.     FIRST CAUSE OF ACTION – DECLARATORY RELIEF; TO DETERMINE STATUS OF DEFENDANT'S CLAIMS [28 U.S.C. § 2201, 2202]

**[As against all Defendants, and all Doe Defendants, inclusive]**

107. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

108. Section 2201(a) of Title 28 of the United States Code states:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than the actions brought

under section 7428 of the Internal Revenue Code of 1986, a

proceeding under section 505 or 1146 of title 11, or in any civil

action involving an antidumping or countervailing duty

proceeding regarding a class or kind of merchandise of a free

trade area country (as defined in section 516A(f)(10) of the

Tariff Act of 1930), as determined by the administering

authority, any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration,

whether or not further relief is or could be sought. Any such

declaration shall have the force and effect of a final judgment or

decree and shall be reviewable as such.

109. Section 2202 of Title 28 of the United States Code states:

"Further necessary or proper relief based on a declaratory

judgment or decree may be granted, after reasonable notice and

hearing, against any adverse party whose rights have been

determined by such judgment."

110. Plaintiffs allege that MERS was not the successor and/or assign of the

interests of the original lender First Franklin.

111. Plaintiffs allege that MERS did not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that the purported recorded assignments have no value since they were executed fraudulently and without the authority, direct or indirect, stated or implied, of the current beneficiary of the Note and Deed of Trust.

112. Plaintiffs further allege that none of the Defendants is the actual successor in interest to the original Lender First Franklin, with respect to the Note an Deed of Trust, since the Lender sold, transferred or assigned all right title and interest to a third party at some time well prior to the interests purported to be asserted by the Defendants.

113. Defendant MERS claims they had a secured enforceable interest in, and perfected lien against, the Plaintiffs' Note, Deed of Trust and Property.

114. Defendant MERS claims they had standing to obtain all of the rights and benefits under the Note and Deed of Trust to the exclusion of the true Beneficiary.

115. Plaintiffs alleges that MERS did not have any standing to obtain all of the rights and benefits under the Note and Deed of Trust to the exclusion of the true beneficiary nor has any claims that they have a secured

enforceable interest in, and perfected lien against, the Plaintiffs' Note, Deed of Trust and Property.

116. Thus, the competing allegations made by Plaintiffs above establish that a real and actual controversy exists as to the respective rights of the parties to this matter with respect to the claimed interest by the Defendant MERS to the benefits and rights under the Note and Deed of Trust, and the Plaintiffs' denial that the Defendants had any right, or standing to assert any right, under the Note and Deed of Trust.

117. Accordingly, Plaintiffs request the Court make a finding and issue appropriate orders stating that MERS and the Doe Defendants had no right or interest in Plaintiffs' Note, Deed of Trust, or the Property; which authorized them, in fact or as a matter of law, to any benefit or right set forth in the Note and Deed of Trust to execute a Security Instrument such as an Assignment that transferred beneficial interest.

118. Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because (1) Plaintiffs will be denied the opportunity to identify and document their true and correct creditor/lender that subsequently deprives Plaintiffs their opportunity to negotiate alternative options to foreclosure; (2) Plaintiffs will be denied the right to conduct discovery and have the claims of MERS verified by

a custodian of records who has personal knowledge of the loan and all transactions related to it; (3) Plaintiffs will be denied the opportunity to discover the true amount they still owe minus any illegal costs, fees and charges; (4) Plaintiffs will face dispossession of their family home.

119. Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether the claims of MERS are enforceable and whether they are secured by any right, title or interest in Plaintiffs' Property.

120. Furthermore, the conduct of MERS, Defendants and one or more Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

/ / /

/ / /

/ / /

/ / /

/ / /

## XII.   SECOND CAUSE OF ACTION – VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.

**[As against all Defendants, and all Doe Defendants, inclusive]**

121. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

122. Defendant's conduct, for the reasons stated herein and fully described above, is in direct violation of Cal. Penal Code Section 532(f)(a)(4), because, as shown and fully described above, the Defendants have caused to be recorded multiple notices with the County Recorder which the Defendants knew and know contain deliberate misstatements, misrepresentations, and omissions.

123. California Business and Professions Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.

124. As more fully described above, Defendants' acts and practices are unlawful, unfair, and fraudulent, and constitute an attempt to obtain through threats and extortion, the Plaintiffs' property (money and home) under threat of imminent loss of their home. This conduct is ongoing and continues to date.

125. Defendants engage in unfair, unlawful[10], extortive and fraudulent business practices with respect to mortgage loan servicing and related matters by, among other things:

    a. Executing and recording false and misleading documents; [11]

    b. Executing and recording documents without legal authority to do so (I.E. The assignment signed by "Gwen Alden" as "assistant secretary" for MERS );

---

[10] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state or municipal, statutory, or court-made. *Saunders v. Superior Court*, 27 Cal. 4th 832 (1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th 499 (1997).

[11] Defendants recording of two assignments, a Notice of Default, and a Notice of Trustee Sale violates Cal. Penal Code section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that Defendants have committed mortgage fraud by filing said documents with the county recorder's office with knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

c. Failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

d. Violating the Security First Rule;

e. Acting as a beneficiary without the legal authority to do so;

f. Recording an Assignment on the subject property without the legal authority to do so; and

g. Other deceptive and coercive practices as described herein.

126. As more fully described above, Defendants' acts and practices are likely to deceive member(s) of the public.

127. As more fully described above, Defendants acts and practices are unfair and the harm cause by the conduct outweighs any benefits that the conduct may have.

128. Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein Defendants violate several laws including Cal. Bus. And Prof. Code section 17200, et seq., and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

129. Plaintiffs allege that Defendant's misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The

scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

130. Plaintiffs allege that Defendant's misconduct is likely to deceive the public based on the Defendant's filings in the records of the County.

131. The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiffs.

132. By reason of the foregoing, Defendant(s) have been unjustly enriched and should be required to make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. Code sections 17203 and 17204.

133. As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs' Property.

134. Defendants have failed to remove this cloud from Plaintiffs' title.

135. Plaintiffs are entitled to an order compelling Defendant MERS and any other defendants or other parties in concert with them claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon the Plaintiff's title.

/ / /

136. Furthermore, Plaintiffs are entitled to an order enjoining such Defendants from taking such action in the future against Plaintiff and Plaintiff's Property.

## XIII.   THIRD CAUSE OF ACTION – VIOLATION OF 12 U.S.C. § 1818(b)

**[As against all Defendants, and all Doe Defendants, inclusive]**

137. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

138. 12 U.S.C. § 1818(b) Cease-and-desist proceedings states:

(1) If, in the opinion of the appropriate Federal banking agency, any insured depository institution, depository institution which has insured deposits, or any institution-affiliated party is engaging or has engaged, or the agency has reasonable cause to believe that the depository institution or any institution-affiliated party is about to engage, in an unsafe or unsound practice in conducting the business of such depository institution, or is violating or has violated, or the agency has reasonable cause to believe that the depository institution or any institution-affiliated party is about to violate, a law, rule, or regulation, or any condition imposed in writing by a Federal banking agency in connection with any action on any application, notice, or

other request by the depository institution or institution-affiliated

party, or any written agreement entered into with the agency, the

appropriate Federal banking agency for the depository institution

may issue and serve upon the depository institution or such party a

notice of charges in respect thereof. The notice shall contain a

statement of the facts constituting the alleged violation or violations

or the unsafe or unsound practice or practices, and shall fix a time

and place at which a hearing will be held to determine whether an

order to cease and desist therefrom should issue against the

depository institution or the institution-affiliated party. Such hearing

shall be fixed for a date not earlier than thirty days nor later than

sixty days after service of such notice unless an earlier or a later date

is set by the agency at the request of any party so served. Unless the

party or parties so served shall appear at the hearing personally or by

a duly authorized representative, they shall be deemed to have

consented to the issuance of the cease-and-desist order. In the event

of such consent, or if upon the record made at any such hearing, the

agency shall find that any violation or unsafe or unsound practice

specified in the notice of charges has been established, the agency

may issue and serve upon the depository institution or the institution-

affiliated party an order to cease and desist from any such violation or practice. Such order may, by provisions which may be mandatory or otherwise, require the depository institution or its institution-affiliated parties to cease and desist from the same, and, further, to take affirmative action to correct the conditions resulting from any such violation or practice.

139. Plaintiff alleges that Defendants is engaging or has engaged, or the agency has reasonable cause to believe that the depository institution or any institution-affiliated party is about to engage, in an unsafe or unsound practice in conducting the business of such depository institution, specifically MERS in transferring beneficial interest in the Assignment.

## XV. FOURTH CAUSE OF ACTION - VIOLATION OF 12 U.S.C. § 1867(c)-(d)

**[As against all Defendants, and all Doe Defendants, inclusive]**

140. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

141. 12 U.S.C. § 1867(c) Services performed by contract or otherwise states: Notwithstanding subsection (a) of this section, whenever a depository institution that is regularly examined by an appropriate

Federal banking agency, or any subsidiary or affiliate of such a

depository institution that is subject to examination by that agency,

causes to be performed for itself, by contract or otherwise, any services

authorized under this chapter, whether on or off its premises—

> (1) such performance shall be subject to regulation and
>
> examination by such agency to the same extent as if such services
>
> were being performed by the depository institution itself on its
>
> own premises, and
>
> (2) the depository institution shall notify each such agency of the
>
> existence of the service relationship within thirty days after the
>
> making of such service contract or the performance of the service,
>
> whichever occurs first.

142. 12 U.S.C. § 1867(d) Issuance of regulations and orders states:

> The Board and the appropriate Federal banking agencies are
>
> authorized to issue such regulations and orders as may be necessary
>
> to enable them to administer and to carry out the purposes of this
>
> chapter and to prevent evasions thereof.

143. Plaintiff alleges Defendants, specifically MERS and MERSCORP has

violated the regulations & stipulations ordered to them by the FDIC and

the OCC in conducting business that is considered unsafe and unsound.

# XVI. **FIFTH CAUSE OF ACTION - VIOLATION OF 12 U.S.C. § 4631**

**[As against all Defendants, and all Doe Defendants, inclusive]**

144. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

145. 12 U.S.C. 4631 Cease-and-Desist Proceedings state:

(a) Issuance for unsafe or unsound practices and violations:

(1) Authority of Director:

If, in the opinion of the Director, a regulated entity or any entity-affiliated party is engaging or has engaged, or the Director has reasonable cause to believe that the regulated entity or any entity-affiliated party is about to engage, in an unsafe or unsound practice in conducting the business of the regulated entity or the Office of Finance, or is violating or has violated, or the Director has reasonable cause to believe is about to violate, a law, rule, regulation, or order, or any condition imposed in writing by the Director in connection with the granting of any application or other request by the regulated entity or the Office of Finance or any written agreement entered into with the Director, the Director

may issue and serve upon the regulated entity or entity-affiliated

party a notice of charges in respect thereof.

(2) Limitation:

The Director may not, pursuant to this section, enforce

compliance with any housing goal established under subpart 2 of

part B of subchapter I of this chapter, with section 4566 or 4567

of this title, with subsection (m) or (n) of section 1723a of this

title, with subsection (e) or (f) of section 1456 of this title, or with

paragraph (5) of section 1430 (j) of this title.

(b) Issuance for unsatisfactory rating:

If a regulated entity receives, in its most recent report of examination, a

less-than-satisfactory rating for asset quality, management, earnings, or

liquidity, the Director may (if the deficiency is not corrected) deem the

regulated entity to be engaging in an unsafe or unsound practice for

purposes of subsection (a).

(c) Procedure:

(1) Notice of charges:

Each notice of charges under this section shall contain a statement

of the facts constituting the alleged practice or violation and shall

fix a time and place at which a hearing will be held to determine

on the record whether an order to cease and desist from such

practice or violation should issue, unless the party served with a

notice of charges shall appear at the hearing personally or by a

duly authorized representative, the party shall be deemed to have

consented to the issuance of the cease and desist order.

(2) Issuance of order:

If the Director finds on the record made at such hearing that any

practice or violation specified in the notice of charges has been

established (or the regulated entity or entity-affiliated party

consents pursuant to section 4633 (a)(4) of this title), the Director

may issue and serve upon the regulated entity, executive officer,

director, or entity-affiliated party an order requiring such party to

cease and desist from any such practice or violation and to take

affirmative action to correct or remedy the conditions resulting

from any such practice or violation.

(d) Affirmative action to correct conditions resulting from violations or

activities:

The authority under this section and section 4632 of this title to issue

any order requiring a regulated entity, executive officer, director, or

entity-affiliated party to take affirmative action to correct or remedy any

condition resulting from any practice or violation with respect to which such order is issued includes the authority to require a regulated entity or entity-affiliated party—

(1) make restitution to, or provide reimbursement, indemnification, or guarantee against loss, if—

(A) such entity or party or finance facility was unjustly enriched in connection with such practice or violation; or

(B) the violation or practice involved a reckless disregard for the law or any applicable regulations or prior order of the Director;

(2) to require a regulated entity to seek restitution, or to obtain reimbursement, indemnification, or guarantee against loss;

(3) to restrict the growth of the regulated entity;

(4) to require the regulated entity to dispose of any loan or asset involved;

(5) to require the regulated entity to rescind agreements or contracts;

(6) to require the regulated entity to employ qualified officers or employees (who may be subject to approval by the Director at the direction of the Director); and

(7) to require the regulated entity to take such other action as the Director determines appropriate.

(e) Authority to limit activities:

The authority to issue an order under this section or section 4632 of this title includes the authority to place limitations on the activities or functions of the regulated entity or entity-affiliated party or any executive officer or director of the regulated entity or entity-affiliated party.

(f) Effective date:

An order under this section shall become effective upon the expiration of the 30-day period beginning on the service of the order upon the regulated entity, finance facility, executive officer, director, or entity-affiliated party concerned (except in the case of an order issued upon consent, which shall become effective at the time specified therein), and shall remain effective and enforceable as provided in the order, except to the extent that the order is stayed, modified, terminated, or set aside by action of the Director or otherwise, as provided in this subchapter.

146. Plaintiff alleges that Defendants are subject to 12 U.S.C. 4631as their business practices is unsafe and unsound, specifically MERS transferring beneficial interest, executed in the Assignment.

# XIV. SIXTH CAUSE OF ACTION – CANCELLATION OF INSTRUMENTS

**[As against all Defendants, and all Doe Defendants, inclusive]**

147. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

148. There is in existence certain written instruments which purport to be:

    a. "Deed of Trust" recorded as Document No. 2006-0317913

    b. "Corporate Assignment of Deed of Trust" recorded as Document No. 2011-0462398.

149. As set forth in detail above, the Defendants has and had no right, title, or interest in the relevant Note and Deed of Trust such that it could enjoy any of the benefits provided under said contracts, including declaring a default, or selling the property.

150. Defendant MERS has and had no right to undertake the benefits conferred under the Note and Deed of Trust, therefore the execution and recording of the document identified above was without legitimacy, force or effect.

151. If the above documents are not cancelled, the Plaintiffs face the loss of title and possession of his property, additional pecuniary damages, and emotional distress.

152. Defendant MERS knew at the time it executed or caused to be executed the above document that it was not entitled to execute same, and that it had no legitimate, demonstrable, or actual right title or interest in the relevant Note and Deed of Trust, but executed and recorded the documents nonetheless.

153. Plaintiffs therefore request the Defendant be ordered to deliver the subject documents to the Clerk for cancellation.

**WHEREFORE,** Plaintiffs prays as follows:

154. For compensatory, special and general damages in an amount according to proof at trial, but not less than $5,000.00, against all Defendants and DOES 1 through 50 inclusive;

155. For punitive and exemplary damages in an amount to be determined by the Court against all Defendants and DOES 1 through 50 inclusive;

156. For an order compelling all Defendants and DOES 1 through 50 inclusive to remove any instrument which does not or could be construed as constituting a cloud upon Plaintiffs' title to the Property, including the Assignment, and other document filed with the County Recorder relative to the subject property;

157. For an order finding that all Defendants and DOES 1 through 50 inclusive have no legally cognizable rights as to Plaintiffs, the Property,

Plaintiffs' Promissory Note, Plaintiffs' Deed of trust or any other matter based on contract or any of the documents prepared by Defendants and DOES 1 through 50 inclusive, tendered to and executed by Plaintiffs;

158. For the Court to issue an order restraining all Defendants and DOES 1 through 50 inclusive, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

159. For a Declaration of Rights and Obligations as between the Plaintiffs and all Defendants with respect to the Note, Mortgage and Deed of Trust and the subject property that is the subject of this complaint;

160. For an order cancelling, rescinding, remanding, and/or voiding Security Instruments such as the Deed of Trust and Assignment.

161. For costs of suit incurred herein;

162. For reasonable attorney fees incurred, and

163. For such other and further relief as the Court may deem proper.

Date: June 04, 2013

     /s/ JOSEPH LA COSTA


Joseph C. La Costa

Attorney for Plaintiff,

Gilberto Soberanis

## **VERIFICATION**

I, Gilberto Soberanis, am the Plaintiffs in the above-entitled action. I have read the above Complaint, and I have personal knowledge of the matters stated herein except as to those matters stated upon information and belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct as executed this 4TH day of June 2013, in the City of San Diego, County of San Diego, State of California.

By: _____

Gilberto Soberanis, Declarant

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, Gilberto Soberanis hereby demand a trial by Jury on all
claims and issues so triable.


Dated: 06/04/2013


By: _____
    Gilberto Soberanis

## **LOCAL RULE 5.1(a) CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in TIME NEW ROMAN, 14-point font, in compliance with Local Rule 5.1(a).

Date: June 04, 2013

/s/ JOSEPH LA COSTA

_____

Joseph La Costa
Attorney for Plaintiff,
Gilberto Soberanis

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Gilberto Soberanis
Alejandro Vargas

**DEFENDANTS**

Mortgage Electronic Registration Systems, Inc.; MERSCORP Holding, Inc.; Gwen Alden and Angela Marie Williams; and Does 1-50, inclusive

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Fairfax, Virginia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joseph La Costa (California Bar Number: 108443)
303 H Street, Suite 429, Chula Vista, California 91910
(619) 922-5287

Attorneys (If Known)

'13CV1296 H    KSC

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☒ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☒ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 2201, 2202; 12 U.S.C. § 1818(b); 12 U.S.C. § 1867(c)-(d); 12 U.S.C. § 4631

Brief description of cause:
Declaratory Relief; unsafe and unsound practice in conducting business of such depository institution

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
06/04/2013

SIGNATURE OF ATTORNEY OF RECORD
/s/ JOSEPH LA COSTA

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.   (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.   Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.   Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.   Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.    Example: U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.   Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.